

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Respondent, )<br>)<br>v. )<br>)<br>WORLEE GLOVER, )<br>)<br>Petitioner. ) | No. 05 C 1600, 04 CR 835<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

In 2004, Worlee Glover pleaded guilty to fraud. Glover has now filed a motion pursuant to 28 U.S.C. § ("section") 2255 to vacate, set aside or correct his sentence. For the reasons set forth below, the motion is denied.

## Background

On September 29, 2004, Glover pleaded guilty to a one-count information charging him with mail fraud. Glover admitted that, while he was employed as a loan officer, he told another person how to complete a fraudulent mortgage application. (Pet., Ex. B, Plea Agreement at 3.) At the time, Glover knew that the person would be ineligible for the mortgage if she used her own identity and credit information. (*Id.*) Glover also prepared various false documents to support the person's alias. (*Id.*) Glover then sent the application via Federal Express to a mortgage lender, which lost approximately $64,000.00 when the borrower defaulted on the loan. (*Id.* at 3-4.) On January 21, 2005, this Court sentenced Glover to four months incarceration,

followed by four months of home detention and three years of supervised release. (*Id.*, Ex. E, 1/21/05 Sentencing Hr'g Tr. at 9-11.)

## Discussion

Glover is entitled to section 2255 relief if his "sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose [it], . . . the sentence was in excess of the maximum authorized by law, or [it] is otherwise subject to collateral attack." 28 U.S.C. § 2255. Glover contends that his sentence is unconstitutional because it was imposed in violation of his Sixth Amendment right to effective counsel.

Glover's counsel was constitutionally ineffective if (1) his performance "fell below an objective standard of reasonableness," and (2) absent his errors, "there was a reasonable probability that . . . [Glover] would not have pleaded guilty and would have insisted on going to trial." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Arango-Alvarez v. United States*, 134 F.3d 888, 892 (7th Cir. 1998).

Glover's first claim of ineffective assistance is based on his attorney's erroneous belief that probation was an available sentence under the Sentencing Guidelines. (*See* Pet. at 6 (stating that Glover "did not plead guilty voluntarily or intelligently based on trial counsel's erroneous information that Petitioner could receive probation when such a sentence was impossible . . . .").) Glover's characterization of his counsel's error – that he gave incorrect sentencing information not that he made an incorrect sentencing prediction – is deliberate. Under the law of this circuit, "[a] gross mischaracterization of the sentencing consequences of a plea," may amount to ineffective assistance, *see United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996), but an inaccurate sentence prediction cannot, *see id.*

2

What separates an actionable mischaracterization from a non-actionable prediction has less to do with the contents of the lawyer's communication than it does with the quality of his work. In the words of the *Barnes* court: "A defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Id.*; *see United States v. Martinez,*169 F.3d 1049, 1053 (7th Cir. 1999) (holding that counsel had not performed deficiently, though he incorrectly told his client that he might be eligible to serve his sentence in a boot camp, because there was no evidence of bad faith).

Glover has offered no evidence that his counsel's belief that probation was available was anything but a good-faith mistake. As a result, he has not satisfied the first element of the *Strickland* test.

Further, even if counsel's performance were deficient, Glover would have to show that he was prejudiced by that conduct to be entitled to relief. As the Seventh Circuit's decision in *United States v. Fuller*, 312 F.3d 287 (7th Cir. 2002) demonstrates, Glover has not made a showing of prejudice.

The petitioner in *Fuller* argued that his trial counsel had labored under a conflict of interest when representing petitioner on his motion to withdraw his guilty plea. *Id.* at 291-92. Specifically, petitioner said, counsel placed his own interest in concealing his negligence above petitioner's interest in withdrawing his plea. *Id.* The error counsel allegedly sought to conceal was his recommendation that petitioner sign the plea agreement, which incorrectly suggested that probation was an available sentence. *Id.* at 288-89.

3

The Seventh Circuit held that there was no conflict of interest. *Id.* at 292. Moreover, the court said, even if there had been a conflict, petitioner would not have been prejudiced:

> Even though defense counsel had failed to inform Mr. Fuller that probation was not a possibility, Mr. Fuller represented in open court under oath that his guilty plea had not been induced by promises or predictions about sentencing. In-court statements at a change-of-plea hearing carry great weight, and Mr. Fuller's later claims cannot overcome the presumption that his representations to the court were truthful.

*Id.* at 293 (citations omitted).

The same is true in this case. At the sentencing hearing, Glover acknowledged that he (1) discussed the plea agreement with his counsel, (2) understood the terms of the agreement, and (3) was satisfied with his counsel's advice and representation. (Pet., Ex. C, 9/29/04 Hr'g Tr. at 7-8.) The following exchange then occurred:

> THE COURT: Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty in this case that is not contained in the plea agreement?
>
> THE DEFENDANT: No, they have not.
>
> THE COURT: Do you understand that the terms of this plea agreement, even though they may be binding as between you and the government, are merely recommendations to me and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than what you may anticipate. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(*Id.* at 8-9.) Thereafter, the Assistant United States Attorney told Glover that the maximum penalty for his crime was "5 years imprisonment, a maximum fine of $250,000, and a term of supervised release of at least two but not more than three years, as well as any restitution ordered by the Court." (*Id.* at 9-10.) After receiving that information, the Court asked Glover: "Are you

satisfied, sir, . . . that you understand all the possible consequences of pleading guilty to this charge?" To which Glover answered: "Yes, your Honor." (*Id.* at 10.)

As in *Fuller*, Glover's sworn statements at the sentencing hearing – that he had not been promised anything to plead guilty, that he understood his crime carried a maximum penalty of five years imprisonment and that the Court was not bound by the plea agreement – vitiates any inference of prejudice. Glover is not, therefore, entitled to any relief on his first ineffective assistance claim.

Glover's second claim for ineffective assistance is based on his lawyer's failure to file a motion for downward departure based on extraordinary family circumstances. (Pet. at 11.) Assuming, *arguendo*, that trial counsel should have filed a motion for downward departure, Glover cannot establish that he was prejudiced by that error. According to the Guidelines, "[f]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S. SENTENCING GUIDELINES MANUAL § 5H1.6 (2003).[1] A court may, however, "depart from an applicable guidelines range once it finds that a defendant's family ties and responsibilities . . . are so unusual that they may be characterized as extraordinary." *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir. 1994).

The extraordinary circumstance that Glover says warrants a downward departure in his case is that his absence will adversely impact his seven-year old daughter, who has Down's syndrome. (Pet. at 12.) Undoubtedly, Glover's absence will impact his daughter; children are always impacted when a parent is incarcerated. *See Canoy*, 38 F.3d at 907 ("[T]he disintegration of existing family life or relationships is insufficient to warrant a departure, as that is to be

---

[1]The plea agreement states that Glover's sentence would be computed using the November 2003 Guidelines. (*See* Pet., Ex. B, Plea Agreement at 4.)

expected when a family member engages in criminal activity that results in a period of incarceration.") But Glover's imprisonment will not leave his daughter without parental support. Glover's wife, the child's mother, will be able to care for her while he is incarcerated. In light of the fact that Glover will be in prison for only four months and his daughter will be cared for by her mother during that time, Glover's family circumstances would not have warranted a downward departure. *See United States v. Jaderany*, 221 F.3d 989, 996 (7th Cir. 2000) ("[A] defendant's ability to rely on a supportive spouse or other relatives to look after his children makes his case for a downward departure less compelling."). Because Glover would not have received a downward departure even if his counsel had requested one, he suffered no prejudice from counsel's failure to do so.

## Conclusion

For all of the reasons set forth above, the Court denies Glover's petition to vacate his sentence pursuant to 28 U.S.C. § 2255 [doc. no. 1]. This case is hereby terminated.

**SO ORDERED.** ENTERED: 12/1/05

HON. RONALD A. GUZMAN
**United States District Judge**